**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 21-20807 (JJT) |
| | ) | | |
| RACHEL CROCKETT, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| | ) | RE ECF NOS: | 73 |

**MEMORANDUM OF DECISION AND RULING ON**
**DEBTOR'S MOTION TO COMPEL ABANDONMENT**

## I. INTRODUCTION

Before the Court is Rachel Crockett's (the "Debtor") Amended Motion to Compel Abandonment under 11 U.S.C. § 544(b) (ECF No. 73, the "Motion"). The Debtor seeks to compel the Chapter 7 trustee, Anthony Novak (the "Trustee') to abandon his investigation and pursuit of certain putative causes of action concerning the Debtor's prepetition financial "transfers" allegedly made to her husband as a contribution towards the purchase of real property known as 429 Huckleberry Road, Avon, Connecticut (the "Property"). For the following reasons, the Debtor's Motion is DENIED.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### III.  BACKGROUND

On August 20, 2021 (the "Petition Date"), the Debtor, a non-practicing lawyer,[1] filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code (ECF No. 1). The Chapter 7 Trustee was appointed the same day. The Debtor listed the Property as her residence, but did not disclose it as an asset on her Schedules. The Section 341 Meeting of Creditors (the "341 Meeting") closed on September 28, 2021 (ECF No. 10).

During the Debtor's 341 Meeting, the Trustee learned that the Debtor transferred approximately $79,000, in two separate transfers, to her husband as a contribution towards the purchase of the Property, which closed on June 9, 2017.[2] The Debtor testified that legal title to the Property is held by the Debtor's husband and her brother-in-law, but not by the Debtor herself. The Debtor's husband and brother-in-law each hold a 50% interest. The Debtor resides at the Property with her husband and children.

After further investigation of the facts, the Trustee filed an Application to Employ Attorney Jeffrey Hellman as special counsel to the estate to pursue colorable claims of unjust enrichment and the possible imposition of a constructive trust, as well as potential fraudulent transfer claims under 11 U.S.C. §§ 544, 547, 548, and 550, and to examine and pursue other remedies under applicable state or federal law (ECF No. 16). At a hearing on the Application, Attorney Hellman informed the Court that the focus of his investigation would begin with the

---

[1] The Debtor, her husband, and her brother-in-law are all licensed attorneys. The Court takes judicial notice of public records evidencing the status of the law licenses for all three individuals. The Debtor was originally licensed to practice law in California in 2009 but was later admitted to practice in Connecticut in 2016. Her status in Connecticut changed to "retirement" on August 6, 2018. Although the Debtor currently resides in Connecticut, the status of her license is presently listed as "active" in California. The Debtor's husband, Christopher S. Crockett, was originally admitted to practice law in California in 2011. He was later admitted to practice in Connecticut in 2016, where his status remains active. The Debtor's brother-in-law, Craig C. Crockett, was admitted to practice law in California in 2009, in Oregon in 2017, and in Connecticut in 2020. His status remains active in all three states.
[2] The Debtor transferred the funds as part of two separate transactions. She transferred $70,000 to her husband as a contribution to the purchase price of the Property, and $9,000 to the real estate broker.

2

Debtor's transfer of approximately $79,000 to her husband as a contribution towards the purchase price of the Property. The Court approved the Application on January 14, 2022 (ECF No. 48).

As an apparent proactive measure intended to preempt the Trustee's filing of an adversary proceeding, the Debtor amended her Schedule A/B to assert an unproven equitable interest in the Property in the form of a constructive trust, which she claimed was fully exempt under Connecticut's homestead exemption.[3] Though her original arguments focused on characterizing her equitable interest as one arising from a constructive trust, she has also advanced arguments during hearings that her interest arises from a resulting trust. On December 16, 2021, the Debtor amended her Schedule C to claim a homestead exemption under Conn. Gen. Stat. § 52-352b(21) for $112,596, or approximately one-third of the value of the Property (ECF No. 22). The Trustee objected on the basis that the Property was not titled in the Debtor's name and that any potential recovery under an unjust enrichment or fraudulent transfer claim, or other potential legal theories, would inure to the benefit of the estate (ECF No. 38). The Debtor has clarified that she only claims an interest in the Property in the event the Trustee chooses to proceed with an adversary proceeding that might result in the Property becoming part of the Debtor's Chapter 7 bankruptcy estate. The Debtor has not initiated a proceeding against her husband and brother-in-law to establish her claimed equitable title.

The Debtor initially moved to compel abandonment of the Trustee's putative claims on January 10, 2022 (ECF No. 36). She argues, on the one hand, that she does not hold an interest in

---

[3] Connecticut's homestead exemption in place at the time the Debtor filed her petition, Conn. Gen. Stat. § 52-352b(t), allowed any natural person to exempt up to $75,000 of their homestead from their bankruptcy estate. Connecticut has since raised the homestead exemption to $250,000, effective October 1, 2021. *See* Conn. Gen. Stat. § 52-352b(21); *see also In re Cole*, No. 21-21071 (JJT), 2022 WL 1134626 (Bankr. D. Conn. Apr. 15, 2022) (this Court's decision on the retroactivity of Connecticut's new homestead exemption, which is currently on appeal in the district court, Case No. 3:22-cv-00587-VAB).

3

the Property and, on the other, that any equitable interest she may have would be subject to full exemption under Connecticut's homestead exemption. She further argues that any transfers to her husband related to purchasing the Property could not form the basis of a fraudulent transfer or unjust enrichment claim. The Trustee objected to the Debtor's original motion on the basis that his investigation of the transfers was not yet complete and that he must defer the decision to file an adversary proceeding until the investigation was further along (ECF No. 45, the "Objection").

In her amended Motion, the Debtor expands upon her previous arguments. The Trustee filed an opposition to the Debtor's Motion wherein he delineated some context for the potential claims he might bring (ECF No. 97). Based on the Proofs of Claims filed by student loan servicers in the Debtor's Chapter 7 bankruptcy case, the Trustee believes he "may" have a fraudulent transfer claim against the Debtor under the Federal Debt Collection Procedures Act because the Debtor owed significant student loan debt at the time of the transfers.[4] The Proofs of Claim show that the Debtor owed $99,906.92 in student loans on the Petition Date.[5] The Trustee further believes he may have an unjust enrichment claim against the Debtor's brother-in-law if he received title to the Property for no consideration.[6] Because the Debtor has already received her discharge and her student loans are the only non-dischargeable debt, the Trustee contends

---

[4] Fraudulent transfer actions under the Bankruptcy Code have a two-year statute of limitations, 11 U.S.C. § 547, whereas Connecticut law imposes a four-year statute of limitations, Conn. Gen. Stat. § 52-552j. When the federal government is a creditor in the case, however, Section 544(b) of the Bankruptcy Code allows the trustee to take advantage of a longer six-year statute of limitations found under certain applicable federal law, such as the Federal Debt Collection Procedures Act. *See* 11 U.S.C. § 544(b); 28 U.S.C. § 3001 *et seq.*; *see also Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 274 (Bankr. S.D.N.Y. 2013).

[5] Proof of Claim No. 1, filed by Navient Solutions, LLC on September 30, 2021, claims $5,873.25 in past due student loan debt owed by the Debtor. Proof of Claim No. 4, filed by Nelnet, Inc. on October 7, 2021, claims $94,033.67 in past due student loan debt owed by the Debtor.

[6] The Trustee's investigation conceivably could also raise colorable claims for the recharacterization of the purchase transaction for the Property.

that any potential recovery on behalf of the estate would go towards paying off her student loans and, therefore, would benefit the Debtor.

During several hearings, the Debtor repeatedly argued that a motion to compel abandonment was the most economical way to dispose of the Trustee's purportedly meritless fraudulent transfer and unjust enrichment claims without the need for an investigation by the Trustee's special counsel. At a hearing on February 10, 2022, the Court highlighted its concerns that the merits of the Trustee's claims were not properly before the Court in a filed adversary proceeding and that there had been no judicial determination as to whether a claim of unjust enrichment, or otherwise, would warrant imposition of a constructive or resulting trust over the Property. The Debtor, insistent that the Court dispose of the Trustee's investigation and assessment of potential claims without factual due diligence and the proper procedural protections of an adversary proceeding, has firmly opposed the Trustee at each hearing and even took the stand as a witness to further argue her case. Her protestations have only increased as the Trustee has continued his scrutiny and served discovery requests on her brother-in-law.

## IV. DISCUSSION

"Typically, the trustee initiates abandonment of property of the estate . . . although other parties may move to have the trustee abandon property." 5 Collier on Bankruptcy ¶ 554.02 (16th ed. 2022). Section 554(a) of the Bankruptcy Code governs situations where the trustee seeks to abandon property on his or her own initiative, whereas subsection (b) governs situations where a party in interest, such as the debtor, moves to compel the trustee to abandon property. 5 Collier on Bankruptcy ¶ 554.02[4] (16th ed. 2022). Here, the Debtor is the party in interest moving to compel the Trustee to abandon potential causes of action concerning the purchase and ownership of the Property.

Section 554(b) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). In cases where a party in interest requests abandonment, the request must be made by motion. 5 Collier on Bankruptcy ¶ 554.02[4] (16th ed. 2022). Where a request for abandonment is opposed, "the party requesting abandonment has the burden of proof." *Id.* The party opposing abandonment, however, "must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient." *Id.*

"Abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so." *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987). "An order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset . . . . Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should rarely be ordered.'" Morgan, 816 F.2d at 246; *see also Viet Vu v. Kendall (In re Viet Vu)*, 245 B.R. 644, 647 (B.A.P. 9th Cir. 2000). Courts will generally defer to a Trustee's exercise of business judgment in determining whether to abandon an estate asset. *See Frostbaum v. Ochs*, 277 B.R. 470 (E.D.N.Y. 2022); *In re Kneer*, 628 B.R. 205 (Bankr. E.D. Pa. 2021); *In re Boyer*, 354 BR 14, 23 (Bankr. D. Conn. 2006), *aff'd* 372 BR 102 (D. Conn. 2006), *aff'd* 2009 WL 1635922 (2d Cir. 2009).

Here, the Debtor seeks abandonment of the Trustee's investigation of putative claims, which she argues have "no consequential value" to the estate because the claims fail as a matter of law on several grounds. The Debtor contends that the transfers of funds to her husband were not fraudulent because the money was earned in California, a community property state, and thus

6

the funds retained community property status. She maintains that transfers of community property funds between spouses do not meet the definition of a "transfer" for purposes of a fraudulent transfer action. She also maintains that she was solvent at the time of the transfers. Further, the Debtor argues that she suffered no detriment as a result of the transfers and, therefore, the Trustee would have no basis for a claim of unjust enrichment.[7] Finally, she argues that all the Trustee's putative claims are barred by the applicable statute of limitations. In the event the Debtor does possess an equitable interest in the Property, she also asserts that her interest would have "no consequential value" to the estate because the interest is subject to full exemption under her claimed homestead exemption. Along with her protestations and contentions, she has generally resisted the Trustee's discovery directed to the issues material to the examination of any putative claims.

The Trustee argues that the Debtor's contentions are premature because his investigation into the alleged transfers and applicable law is ongoing and, as such, he has not yet chosen to even bring an adversary proceeding. The Trustee further argues that any potential claims available to him are not burdensome to the estate as Attorney Hellman was retained as special counsel on a pure contingency fee basis where the estate would not incur any fees in the prosecution of those potential claims unless the Trustee is successful in an adversary proceeding. He maintains that the Debtor's attempt to argue the merits of a potential adversary proceeding through the vehicle of a motion to compel abandonment is premature and procedurally inappropriate. Further, the Trustee contends that courts generally defer to a trustee's business

---

[7] In support of her community property argument, the Debtor also filed an affidavit (ECF No. 58) and four sections of the California Family Code (ECF Nos. 59–62).

judgment in determining whether and when to abandon an estate asset, particularly at such an early stage in the case.[8]

The Court agrees with the Trustee.

The Debtor attempts to couch her arguments in terms of whether the Trustee's putative claims are burdensome or of inconsequential value and benefit to the estate, but the Court construes her papers as asserting potential affirmative defenses that ordinarily would be pled in the defendant's answer in an adversary proceeding. Those defenses include failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and expiration of the applicable statute of limitations. The Debtor's arguments about the relevance of the alleged community property status of the transferred funds used to purchase the Property are not clear at this stage.[9] Her bald assertions conveniently ignore the legal complexities of the issues raised in this dispute.

At present, there is no property of the estate for the Trustee to administer because the Debtor does not hold legal title to the Property and does not have a judgment properly imposing any form of trust on the Property under state law that would bring the Property into her Chapter 7 bankruptcy estate.[10] The potential claims that the Trustee has suggested, and the question of whether a constructive or resulting trust might be imposed on the Property as an equitable remedy, are substantial issues that indisputably belong in an adversary proceeding involving all affected parties.

---

[8] The Trustee also objected to the Debtor's claim of exemption in the Property, arguing that a debtor cannot claim a homestead exemption in property he or she does not own and that, to the extent the Debtor might have an equitable interest in the Property, there has been no judicial determination of that issue yet (ECF No. 38).

[9] For example, the Debtor focuses on characterizing the $79,000 in transferred funds to her husband as protected community property because that money was earned in California, but fails to explain the mechanics of the actual purchase of the Property, which occurred in Connecticut.

[10] The Debtor's only asset available to satisfy creditors was her non-filing spouse's expected 2021 tax refund, which she disclosed on her Schedules (ECF No. 25). The Debtor received her discharge on February 24, 2022 (ECF No. 76).

"An action to recognize and apply a constructive trust is a proceeding to 'recover money or property,' to 'determine the validity, priority, or extent of an interest in property' and/or to 'obtain . . . equitable relief,' and must therefore be prosecuted as an adversary proceeding, with its attendant procedural formalities and safeguards as afforded by Part VII of the Federal Rules of Bankruptcy Procedure." *Vanco Trading, Inc. v. Monheit (In re K Chemical Corp.)*, 188 B.R. 89, 98 (Bankr. D. Conn. 1995) (Judge Dabrowski) (quoting Fed. R. Bankr. P. 7001(1), (2) and (7)); *see also In the Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994) (reviewing the interface between federal bankruptcy law and state laws providing for the imposition of a constructive trust).

In *Matter of Haber Oil*, the Fifth Circuit characterized constructive trusts in bankruptcy as follows: "Under the usual version of the constructive trust doctrine, one who has been unjustly enriched at another's expense is treated under state law much like a trustee, holding legal title for the injured party's benefit . . . . We have thus consistently recognized that § 541(d) [of the Bankruptcy Code] accords the beneficiary of a constructive trust, *properly imposed under state law*, the right to recover the trust property from the bankruptcy trustee or the debtor." *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 436 (5th Cir. 1994) (emphasis added). In *Vanco Trading*, even though "non-frivolous allegations of fact existed which could establish a record of misconduct sufficient to recognize and apply a constructive trust," Judge Dabrowski held that a contested matter regarding determination of an administrative claim was an inappropriate procedural vehicle for the debtor's assertion of a constructive trust. *Vanco Trading*, 188 B.R. at 98.

The Fifth Circuit in *Matter of Haber Oil Co.* underscored an integral component of the necessary process involved in obtaining a constructive trust as an equitable remedy: it must be

9

properly imposed under state law. *Haber Oil*, 12 F.3d at 436. In Connecticut, the basic components of a constructive trust are as follows:

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee . . . . The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment . . . . Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.

*Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 466 (2009); *see also Vanco Trading*, 188 B.R. at 97–98 ("[W]hether a constructive trust exists . . . is purely a matter of state law," and "Connecticut case law discussing constructive trusts is not extensive."). Because neither the Debtor nor the Trustee in this case have taken action towards obtaining a judgment that properly imposes a constructive or resulting trust on the Property under Connecticut law, or any other applicable state law, this Court cannot entertain the merits of imposing an equitable trust in favor of the bankruptcy estate in the context of a motion to compel abandonment in a Chapter 7 bankruptcy proceeding.[11]

The Debtor's Motion is plainly premature at this point, as it seeks to preempt the Trustee's review of the very issues that would resolve the question of whether there was an improper transfer of funds or whether the Debtor is entitled to an equitable interest in the Property. Moreover, this Court does not have personal jurisdiction over the Debtor's non-filing husband and her brother-in-law, the two individuals who hold legal title to the Property, unless

---

[11] The Debtor has argued at several hearings that an equitable trust in her favor arises automatically by operation of law. Though that may be true, *see, e.g., Cohen v. Cohen*, 182 Conn. 193, 201 (1980) (resulting trust ordinarily arises at once by operation of law), the Debtor must still obtain a judgment under state law to that effect, *see Haber Oil*, 12 F.3d at 436. Whether the Debtor claims an equitable interest arising from a constructive or a resulting trust, the Court's conclusion is the same: these issues indisputably belong in an adversary proceeding. *See, e.g., Levinson v. Lawrence*, 162 Conn. App. 548, 554 (2016) (discussing resulting trusts and the factual findings necessary for a court to impose one).

the Trustee or the Debtor bring an adversary proceeding against them.[12] *See* Fed. R. Bankr. P. 7004(f); *Lehman Bros. Special Fin., Inc. v. Bank of America N.A. (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015); *Bickerton v. Bozel S.A. (In re Bozel S.A.)*, 434 B.R. 86, 97 (Bankr. S.D.N.Y. 2010). The Debtor's argument that the Trustee's putative claims are barred by expiration of the applicable statute of limitations extends far outside the boundaries of a motion to compel abandonment and would be more appropriately raised in a motion to dismiss the complaint if and when the Trustee brings an adversary proceeding. The Court will not address the merits of the Trustee's unasserted potential claims at this stage or whether the applicable statutes of limitations have expired yet, as those claims, if tenable, must succeed or fail upon a complaint filed with the proper procedural protections.

Despite the premature nature of the Debtor's Motions, the Court will address whether the Debtor has met her burden of proof. The Court finds that she has not done so. Although the Debtor cites to the appropriate legal authority concerning the standard for compelling a trustee to abandon estate property, her papers and the record do not support a conclusion that the Trustee's investigation or pursuit of these putative claims is burdensome to the estate or of inconsequential value and benefit to the estate. The Court finds, to the contrary, that the Trustee's current examination and pursuit of these claims is not unduly burdensome to the estate because Attorney Hellman has taken these matters on a contingency fee basis and, thus, the estate is not incurring any fees or expenses throughout his investigation or during any potential, future adversary

---

[12] Fed. R. Bankr. P. 7004(f) states: "If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of [Fed. R. Civ. P.] Rule 4 [] made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code."

proceeding. Such an arrangement likely incentivizes special counsel to only prosecute claims with a reasonable prospect of success, after appropriate legal scrutiny.

At this juncture, the Trustee maintains that he cannot definitively or reliably determine whether the Property is of inconsequential value and any benefit to the estate until he completes his investigation. Notwithstanding that, the Debtor bears the burden of proof on this Motion. *See* 5 Collier on Bankruptcy ¶ 554.02[4] (16th ed. 2022). As previously stated, the Debtor's arguments merely amount to assertions of potential affirmative defenses to unasserted claims that belong in a fully pled adversary proceeding. Nowhere does the Debtor articulate any alternative tenet upon which the Court should order abandonment of the Trustee's putative claims. Her arguments simply fall short of meeting her burden of proving that the cost of administering the Property exceeds any currently foreseeable benefit to the bankruptcy estate. *See* 5 Collier on Bankruptcy ¶ 554.02[4] (16th ed. 2022) ("[T]he party requesting abandonment has the burden of proof.").

The Trustee's decision to pursue, or not pursue, claims concerning ownership of an asset and the alleged fraudulent or improper nature of prepetition transactions is an appropriate exercise of his business judgment. *In re Boyer*, 354 BR 14, 23 (Bankr. D. Conn. 2006), *aff'd* 372 BR 102 (D. Conn. 2006), *aff'd* 2009 WL 1635922 (2d Cir. 2009). The Debtor's Motion is a starkly premature and strategic attack that seeks to prevent and frustrate the Trustee from completing critical due diligence. The Trustee's business judgment deserves deference in this case because his duty of investigation under the Bankruptcy Code is anchored to colorable facts or law that may benefit the bankruptcy estate. His investigation thus far has yielded recognized but tentative legal theories of recovery that are more than mere speculation. It is otherwise

inappropriate for the Court to interfere at this time because the Trustee's actions are not a patently unsupportable, abusive, or frivolous exercise of his business judgment.

V. **CONCLUSION**

Based on the foregoing, the Court finds that the Debtor's Motion is an inappropriate attempt to preemptively assail the Trustee's developing factual and legal theories of avoidance of certain Property-related transfers. The Trustee's potential claims, which may not be limited to unjust enrichment and fraudulent transfer, are deserving of further factual and legal investigation. The Trustee is entitled to exercise his business judgment in weighing those particular facts and legal theories to determine whether to bring an adversary proceeding. Without definitive facts presented in an evidentiary hearing demonstrating a patent abuse of process, this Court is appropriately reluctant to interfere with the Trustee's case administration. The Debtor has not provided compelling authority for this Court to act otherwise. Accordingly, the Debtor's Motion is DENIED.

**IT IS SO ADJUDGED, ORDERED AND DECREED** at Hartford, Connecticut this 8th day of June 2022.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut